**Frank LUTHER, Trustee of the Garden Grain & Seed Co., Inc., Cross-Appellant,**

**v.**

**UNITED STATES of America, Cross-Appellee.**

**In the Matter of Garden Grain and Seed Co., Inc., Bankrupt.**

**No. 4929.**

United States Court of Appeals Tenth Circuit.

Oct. 25, 1954.

Rehearing Denied July 27, 1955.

Malcolm Miller, Wichita, Kan., for cross-appellant.

John G. Laughlin, Atty., Dept. of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., William C. Farmer, U. S. Atty., Wichita, Kan., and Melvin Richter, Atty., Dept. of Justice, Washington, D. C.; were with him on the brief), for cross-appellee.

Before BRATTON, MURRAH, and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

This is another link in the chain of controversies arising out of the Garden Grain & Seed Company bankruptcy proceeding. At the intervention of bankruptcy, the bankrupt had in storage in its grain elevators certain wheat and certain milo which were subsequently sold under order of the bankruptcy court and the proceeds of the sale were placed in a separate account to await the disposition of claims thereto. The United States filed in the proceeding a proof of claim, with an assertion of priority. It was pleaded in the proof of claim that the bankrupt was indebted to the Commodity Credit Corporation, hereinafter referred to as Commodity, for certain wheat and certain milo which had been deposited with the bankrupt for storage, and for other items of indebtedness. The trustee filed in the proceeding an answer to the claim, a counter-claim, and an action to recover; and he also filed two actions in the nature of interpleaders, one dealing with the wheat and the other with the milo which came into his hands. The referee considered the entire controversy presented upon the pleadings in that form. The referee entered an order determining that the bankrupt was indebted to Commodity in a certain amount; that the bankrupt was entitled to an offset for certain overpayments in income tax; that a certain amount should be paid to the United States out of the wheat fund and a certain sum out of the milo fund; and that the remaining portion of the amount due Commodity should be paid as a fifth priority under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. Both the United States and the trustee petitioned the district court for review of the order of the referee. While the petitions for review were pending, the Comptroller General of the United States issued certificates of settlement of overpayments of income tax by the bankrupt and the Treasurer of the United States issued to the treasurer of Commodity checks for the amount of the

overpayments in income tax and by bookkeeping entries the checks were deposited to the credit of Commodity in the Treasury. Thereafter, the trustee filed in the district court a motion to dismiss the petition for review filed by Commodity on the ground that, having received and accepted the benefits of the order or judgment of the referee, Commodity forfeited all right to a hearing on its petition for review. The district court denied the motion to dismiss the petition for review and sustained the order of the referee. The United States appealed and the trustee perfected a cross-appeal. Upon the trustee's representation that a hearing of his cross-appeal would, if he were sustained, render it unnecessary to consider the Government's appeal, this court deferred the printing of the record and a hearing on the Government's appeal pending a disposition of the cross-appeal; and the cause is now before the court on the cross-appeal.

 The trustee assigns error upon the action of the district court in denying the motion to dismiss the petition for review filed by the United States. It is argued in support of the contention that by obtaining payment of the tax refund while the question of the right of Commodity to the benefit of the refund was being litigated in this proceeding, the United States lost its right further to challenge the order of the referee on review in the district court. It is a well established general rule of solid foundation that a litigant who accepts all or any substantial part of the benefits of a judgment or decree is precluded from asking that such judgment or decree be reviewed on appeal. He cannot avail himself of its advantages and then challenge its disadvantages on appeal. After accepting all or any substantial part of its benefits, he cannot escape its burdens. Chase v. Driver, 8 Cir., 92 F. 780; Finefrock v. Kenova Mine Car Co., 4 Cir., 37 F.2d 310; Smith v. Morris, 3 Cir., 69 F.2d 3; Kaiser v. Standard Oil Company of New Jersey, 5 Cir., 89 F.2d 58; In re

Denney, 7 Cir., 135 F.2d 184, certiorari denied, 320 U.S. 747, 64 S.Ct. 50, 88 L.Ed. 444; In re Electric Power & Light Corp., 2 Cir., 176 F.2d 687; Kantor v. American & Foreign Power Co., 1 Cir., 197 F.2d 307. Engrafted upon that general rule is the firmly established exception that where a judgment or decree adjudicates separable or divisible controversies, the appealing party may accept the benefit of the separate or divisible feature in his favor and challenge the feature adverse to him, or where the appealing party is entitled to some amount in any event, he may accept such sum and ask that the balance of the judgment or decree be reviewed. Embry v. Palmer, 107 U.S. 3, 8, 2 S.Ct. 25, 27 L.Ed. 346; Worthington v. Beeman, 7 Cir., 91 F. 232; Reynes v. Dumont, 130 U.S. 354, 394, 9 S.Ct. 486, 32 L.Ed. 934; Carson Lumber Co. v. Saint Louis & San Francisco Railroad Co., 10 Cir., 209 F. 191; Peck v. Richter, 8 Cir., 217 F. 880; Spencer v. Babylon Railroad Co., 2 Cir., 250 F. 24; Armstrong v. Lone Star Refining Co., 10 Cir., 20 F.2d 625.

 But in this instance there was no receipt or acceptance of an advantage or benefit under the order of the referee, within the intent and meaning of the general rule or the exception to which reference has just been made. The Department of Agriculture notified the Commissioner of Internal Revenue that the bankrupt owed Commodity approximately $122,000 and requested that payment of any tax refund due the bankrupt be withheld in order that the matter might be referred to the General Accounting Office for purposes of partially liquidating the Government's claim. The General Accounting Office was similarly informed, with a request that any tax refund due the bankrupt should be used to partially liquidate the bankrupt's indebtedness to the Government. In due time, the certificates of settlement covering the overpayments of income tax were issued, and pursuant thereto checks were drawn on the Treasury of the United States. The checks

were made payable to the treasurer of Commodity, and by bookkeeping entries the amounts were credited to Commodity in the Treasury. But no money was received in the Treasury or paid from it. The United States received nothing, paid out nothing, suffered no detriment, and enjoyed no financial advantage or benefit. The several actions taken were merely intra-governmental steps in the adjustment of accounts. And they were taken pursuant to administrative procedure, entirely apart from the order of the referee. There is nothing in the record to indicate even remotely that the order of the referee brought about the intra-governmental steps or was even taken into consideration. In these circumstances, it cannot be said that by accepting an advantage or benefit under the order of the referee, the United States surrendered its right further to seek review of such order.

■ The judgment of the district court is challenged upon the further ground that the referee erroneously offset the tax refund due the bankrupt against the indebtedness which the bankrupt owed Commodity. It is said in this connection that Commodity is a distinct legal entity from the United States; that the United States filed the claim in this proceeding on its own behalf and not on behalf of Commodity; that in a bankruptcy proceeding setoffs may be allowed only where debts and credits are mutual; that a setoff may be allowed only where a mutual debt and credit existed as of the date upon which the petition in bankruptcy was filed; and that the tax refund due the bankrupt under the judgment obtained by the trustee was not due on the date of the filing of the petition in bankruptcy in the sense that there was at that time no legal duty on the United States to make such refund since no claim therefor had been filed. At the intervention of bankruptcy, no claim for refund of the overpayments of income tax had been filed, and no determination had been made in respect to the existence of such overpayments or the amount thereof. But the overpayments

had been made and the liability therefor existed. The amount of such liability was not ascertained and determined until later. But it existed in an undetermined amount at the time of the filing of the petition in bankruptcy. And the mere fact that the amount of the liability was not determined until after the intervention of bankruptcy does not deprive the Government of the right of setoff if it otherwise would have existed. In Cherry Cotton Mills v. United States, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835, the Government owed the petitioner a certain sum as a refund of processing taxes which had been paid. At the same time, the petitioner owed the Reconstruction Finance Corporation a larger sum as the balance due on a promissory note for money borrowed. The General Accounting Office directed the Treasury to issue a check for the refund in processing tax payable to the Reconstruction Finance Corporation to partially liquidate the indebtedness of the petitioner to that governmental agency. The petitioner brought the action against the Government in the Court of Claims to recover the tax refund. The Government filed a counterclaim based upon the balance due on the note to the Reconstruction Finance Corporation. The Supreme Court discussed the question whether the Court of Claims had jurisdiction to entertain the counterclaim, but it was implicit in the opinion that the right of setoff existed. That case is controlling here and leads to the conclusion that the overpayments of income tax were properly offset against the amount which the bankrupt owed Commodity.

■ The remaining contention advanced by the trustee on his cross-appeal is that the referee erred in failing and refusing to subordinate the claim of Commodity to the claims of other general creditors. After learning that the bankrupt was insolvent, that it was short in its storage obligations, and that therefore it had no grain free of commitment to others with which to satisfy Commodity's claim, Commodity received and accepted from the bankrupt grain

which had been deposited by other bailors or grain which the bankrupt induced other common creditors to sell on credit. It is said that this was inequitable conduct on the part of Commodity which required the referee to subordinate its claim to the claims of other general creditors. A bankruptcy court is a court of equity and is guided by equitable principles and doctrines except when they are inconsistent with controlling statutory provisions. And generally, a court of bankruptcy has power to subordinate the claim of one creditor to the claims of other creditors where subordination is necessary to prevent the consummation of conduct which is inequitable. Central States Corp. v. Luther, Trustee, 10 Cir., 215 F.2d 38. But the action of the court in granting or denying subordination of this particular claim was not governed by general principles of equity. Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a gives fifth position in point of priority to debts owing to any person, including the United States, who by the laws of the United States is entitled to priority. By 31 U.S.C.A. § 191, the United States is given priority in respect to debts due by insolvent persons. And by section 4(e) of the Act approved June 29, 1948, 62 Stat. 1070, 1071, 15 U.S.C.A. § 714b (e), Commodity is expressly given all of the rights, privileges, and immunities of the United States with respect to the right of priority of payment of debts due by insolvent or bankrupt debtors. The effect of these several statutory provisions, operating together, was to place the claim in question in fifth position with respect to priority. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283. And since it was given that position by statutory command, the referee was without equitable power to place it in any other position. Carpenter v. Wabash Railway Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558.

The trustee argues that there is a difference between the allowance of a claim and the subordination of a claim to other claims. He says that until a claim is allowed in some amount, priority or subordination is not germane. Allowance of a claim and subordination of a claim are not synonymous. They relate to distinct matters. A claim must be allowed before the question of priority or subordination becomes pertinent. But that distinction is academic here for the reason that the trustee predicates error upon the refusal of the referee to subordinate the claim to the claims of other common creditors. And as already indicated, once the claim was allowed, the pertinent statutory provisions to which reference has been made intervened and placed it in fifth position in point of priority.

Insofar as the cross-appeal of the trustee is concerned, the judgment of the district court sustaining the order of the referee is Affirmed.