**In re HAL, INC.; Hawaiian Airlines, Inc.; and West Maui Airport, Inc., Debtors.**

**HAL, INC.; Hawaiian Airlines, Inc.; and West Maui Airport, Inc., Appellants,**

v.

**UNITED STATES of America, Appellee.**

BAP No. HI–95–1354–JVO.

Bankruptcy Nos. 93–01072, 93–01073 and 93–01074.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 18, 1996.

Decided April 24, 1996.

Ronald S. Orr, Los Angeles, CA, Bennett L. Silverman, Los Angeles, CA, for Appellants.

Thomas J. Sawyer, Washington, DC, for Appellee.

Before: JONES, VOLINN, and OLLASON, Bankruptcy Judges.

### OPINION

JONES, Bankruptcy Judge:

### SUMMARY

The chapter 11 debtor made prepetition overpayments of excise taxes to the IRS. The United States filed a motion for relief from the automatic stay, seeking permission to use the overpayments to offset debts owed by debtor to other federal agencies. The bankruptcy court, holding that all federal government agencies are a single entity for purposes of setoff, granted the motion. **We affirm.**

### I. FACTS

On September 21, 1993, Hawaiian Airlines, along with related entities HAL, Inc. and West Maui Airport, Inc. (collectively referred to as "Debtors") filed chapter 11 petitions.[1] Prior to bankruptcy, Hawaiian Airlines remitted quarterly payments of Air Transportation Excise Taxes ("Excise Taxes") to the IRS. After the Debtors filed bankruptcy, the IRS conducted an audit and concluded that Hawaiian Airlines had committed errors in the reporting and paying of the Excise Taxes. After seeking relief from the stay, the IRS assessed the correct Excise Taxes, readjusted Hawaiian Airlines' pre- and post-petition payments, and determined that Hawaiian Airlines had made overpayments totaling $215,000.

---

1. Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

On September 9, 1994, the United States filed a Motion For Relief From Stay To Effectuate A Setoff. The United States sought an order allowing it to use the $215,000 overpayment to offset the claims of other agencies.[2] Under the terms of the confirmed plan, creditors with non-priority unsecured claims receive stock of the reorganized Debtors as payment in full of their claim. Therefore, if setoff were not allowed, the government agencies would receive stock in full payment of their claims.

On January 24, 1995, the bankruptcy court held a hearing to determine if the other governmental agencies could use the $215,000 as a setoff pursuant to § 553. The bankruptcy court entered an order, findings of fact, and conclusions of law on March 17, 1995, which granted the United States' motion for setoff. The bankruptcy court ruled:

1. The United States and its agencies are treated as single entities for purposes of setoff, both outside of bankruptcy and by the Bankruptcy Code. Therefore, mutuality exists between the government agencies and Hawaiian Airlines.

2. Bankruptcy courts have wide discretion to grant setoff, and may deny setoff if the party seeking setoff engaged in inequitable conduct.

3. Setoff was proper because (a) the United States had not engaged in inequitable conduct; (b) the inherent unfairness to other unsecured creditors of allowing setoff does not mandate denial of setoff; (c) a mistaken overpayment of taxes does not warrant denial of setoff; and (d) setoff would lessen the eventual ownership interest of the United States in a corporation which it regulates extensively.

The Debtors appeal.

## II. ISSUES

1. Did the bankruptcy court err in holding that the United States and its agencies are a single entity for purposes of the mutuality requirement of setoff under § 553?

2. Did the bankruptcy court abuse its discretion in allowing the United States to use the $215,000 overpayment to the IRS to offset the claims of other agencies?

## III. STANDARD OF REVIEW

Whether or not the United States is a single entity for purposes of setoff is a question of law, which we review *de novo*. See *In re Doe*, 58 F.3d 494, 498 (9th Cir. 1995). Whether or not to allow setoff pursuant to § 553 is left to the sound discretion of the bankruptcy court. *In re Cascade Roads, Inc.*, 34 F.3d 756, 763 (9th Cir.1994). Therefore, we review the bankruptcy court's decision to allow setoff for abuse of discretion. *Id.*

## IV. DISCUSSION

The Bankruptcy Code states that the filing of a bankruptcy petition does not (except in certain circumstances not applicable in this appeal), "affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ... against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553(a) (1994). Section 553, therefore, recognizes in bankruptcy a party's nonbankruptcy right to setoff mutual prepetition debts, but does not itself create such a right. *Citizens Bank of Maryland v. Strumpf*, —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995); *Cascade Roads*, 34 F.3d at 763; *In re Buckenmaier*, 127 B.R. 233, 237 (9th Cir. BAP 1991).

To enforce a setoff right, "[a creditor] must establish that (1) it has a right of setoff under nonbankruptcy law; and (2) this right should be preserved in bankruptcy under § 553." *In re County of Orange*, 183 B.R. 609, 615 (Bankr.C.D.Cal.1995). The principle element of setoff is mutuality, which requires that the debts are "in the same

2. The United States proposed to use the money to setoff the following claims in the following order:

| | |
|---|---|
| Federal Aviation Administration: | $ 94,500 |
| United States Air Force: | $ 51,121 |
| Department of Agriculture: | $ 55,101 |
| Immigration and Naturalization Service: | $299,375 |

right and between the same parties, standing in the same capacity and same kind or quality." *Boston and Maine Corp. v. Chicago Pac. Corp.*, 785 F.2d 562, 566 (7th Cir.1986). Both sides agree that all relevant debts arose prepetition. Therefore, the only issues presented on appeal are whether the United States has a nonbankruptcy right to setoff (which in turn requires a finding that mutuality is satisfied), and if so, whether the bankruptcy court abused its discretion in permitting setoff.

### A. Does the United States Have a Non-bankruptcy Right of Setoff?

■ The notion of "setoff" dates back to early Roman and French law. *Buckenmaier*, 127 B.R. at 237; *In re Hancock*, 137 B.R. 835, 840 (Bankr.N.D.Okla.1992). Because setoff was not recognized as a legal right in early English common law, it was first used by the courts of equity as a discretionary procedural device in order to prevent multiplicity of actions. 4 *Collier on Bankruptcy* ¶ 553.01 at 553–3 (15th ed. 1991); *Hancock*, 137 B.R. at 840. In other words, the use of setoff prevented a court from having to entertain two separate lawsuits, enter two separate judgments, and require the parties to try and collect on their individual judgments. Instead, the court merely netted out the amounts owing and entered one judgment, "thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Strumpf*, —— U.S. at ——, 116 S.Ct. at 289 (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)). Gradually, however, setoff has also come to be recognized as a legal right, both under statute [3] and as a "latter-day common-law doctrine derived from the equitable doctrine." *Hancock*, 137 B.R. at 840.

Courts have consistently recognized this broad common law right to setoff amongst government agencies outside of bankruptcy.

"The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947) (quoting *Gratiot v. United States*, 40 U.S. (15 Pet) 336, 370, 10 L.Ed. 759 (1841)); *see also Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 540, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946); *In re Turner*, 59 F.3d 1041, 1044 (10th Cir.1995); *Doe*, 58 F.3d at 498; *United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir.1986); *In re Medina*, 177 B.R. 335, 348–50 (Bankr.D.Ore.1994).

The seminal case on the issue of government agency mutuality is *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946). In *Cherry Cotton Mills*, the plaintiff was owed a tax refund for taxes paid under the Agricultural Adjustment Act ("AAA"). In turn, the plaintiff owed the Reconstruction Finance Corporation ("RFC") on a promissory note. The General Accounting Office was instructed to apply the AAA tax refund to the balance owing on the RFC promissory note. The plaintiff sued for the tax refund in the Court of Claims. When the government filed a counterclaim on behalf of the RFC, the plaintiff argued that the Court of Claims did not have jurisdiction to hear the counterclaim. The plaintiff reasoned that because the RFC was a "corporation" it should not be treated as a government agency subject to the Court of Claims' jurisdiction.

In rejecting this contention, the Supreme Court stated that just because the RFC was called a "corporation" did not alter the fact that "its activities are all aimed at accomplishing a public purpose; all of its money comes from the Government; its profits, if any, go to the Government; its losses the Government must bear." *Id.* at 539, 66 S.Ct. at 730. The Court then concluded:

> enter into an agreement with the IRS, notify the IRS of any deficiency, and conform to the procedural due process requirements contained in the statute. Another setoff provision requires the Comptroller General to "withhold paying that part of a judgment against the United States ... that is equal to a debt the plaintiff owes the Government." 31 U.S.C. § 3728 (1994).

---

**3.** The federal government, for example, has enacted various statutory setoff provisions in title 31 of the United States Code. One section authorizes government agencies to setoff "past-due legally enforceable debt[s]" with the unpaid federal tax refunds of the debtor. 31 U.S.C. § 3720A (1994). However, in order to use this section, the government agency has to formally

The Government here sought neither immunity nor priority. Its right to counterclaim rests on different principles, one of which was graphically expressed by the sponsors of the Act [which created the Court of Claims] ...: It is "as much the duty of the citizen to pay the Government as it is the duty of the Government to pay the citizen."

*Id.* at 540, 66 S.Ct. at 730. Thus, *Cherry Cotton Mills* has been widely cited as establishing the United States' general right to setoff. *In re Turner,* 59 F.3d 1041, 1045 (10th Cir.1995).

This reasoning was applied in the bankruptcy context in *Luther v. United States,* 225 F.2d 495 (10th Cir.1954). In *Luther,* a bankruptcy referee entered an order allowing the government to offset the debtor's income tax refund against a debt owed by the debtor to the Commodity Credit Corporation, which is part of the Department of Agriculture. On appeal, the Tenth Circuit held that "it [is] implicit in the [*Cherry Cotton Mills* ] opinion that the right of setoff exist[s]. That case is controlling here and leads to the conclusion that the overpayments of income tax were properly offset against the amount which the bankrupt owed Commodity." *Luther,* 225 F.2d at 498.

Recent decisions interpreting § 553 of the Bankruptcy Code have resulted in a split of authority. The majority have held that the governmental agencies satisfy the mutuality requirement under § 553. 3 *Norton Bankruptcy Law & Practice* 2d, § 63.6 at 63–35 (1994) ("In fact, very few cases have held that such inter-governmental unit setoffs are improper. Those which do are often reversed on appeal."); *see also In re Julien Co.,* 116 B.R. 623, 625 (Bankr.W.D.Tenn. 1990) (authorities such as *Cherry Cotton Mills* "recognize that each federal entity is a 'part of the Government.'"); *In re Thomas,* 84 B.R. 438, 440 (Bankr.N.D.Tex.), *aff'd in part. rev'd in part,* 91 B.R. 731 (N.D.Tex. 1988) (denying a government agency the right of setoff would allow a debtor to "improve his position vis a vis [a government agency] merely by filing a bankruptcy petition").

However, a minority of courts have held that government agencies are not entitled to setoff under § 553 because the mutuality requirement should be more strictly construed in bankruptcy, both in a reorganization, *Turner,* 59 F.3d at 1045, and a liquidation. *See Hancock,* 137 B.R. at 841. These decisions distinguish *Cherry Cotton Mills* because it was not a bankruptcy case and did not involve an agency seeking priority over other creditors. *See In re Pyramid Indus., Inc.,* 170 B.R. 974, 983 (Bankr.N.D.Ill.1994) (and cases cited therein).

Only two circuit courts have addressed the issue of mutuality, and they came to different conclusions. The minority position was adopted by the Tenth Circuit in *In re Turner,* 59 F.3d 1041 (10th Cir.1995). In *Turner,* the Tenth Circuit distinguished its previous holding in *Luther* because it arose under the Bankruptcy Act and occurred in a liquidation, not a reorganization case. The court concluded that:

> While we recognize that the United States normally has a right to setoff, *see Cherry Cotton Mills v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946), we agree ... that setoff should be given a narrow meaning in the reorganization context. ... This narrow interpretation of setoff is best accomplished by strictly construing the mutuality requirement.
>
> We acknowledge that all federal agencies draw from or contribute to a common pool of money, the U.S. Treasury. This familial relationship between the SBA and the ASCS does offer some support for a finding of mutuality. The general rule, however, holds that triangular setoffs among related parties do not meet the mutuality requirement. Thus, in the corporate context, "[i]t is well-established that one subsidiary may not set off a debt owed to a bankrupt against a debt owing from the bankrupt to another subsidiary." We think the transaction attempted in this case to be closely analogous to a triangular setoff between related corporate entities. To treat government agencies more favorably than comparable private parties would run counter to the principle that all like creditors should be treated equally.

We note, moreover, that, notwithstanding familial ties, government agencies frequently squabble in court. Separate agencies have distinct budgets and interests, and occasionally sue each other to protect their budgets and interests. More important to the question analyzed here, *bankruptcy law* does not treat individual agencies as a single unit when multiple agencies are creditors in the same case. Rather, some agency claims are given priority over others based on general principles of bankruptcy law, such as whether the debt was secured. We see no reason to accord agencies more favorable treatment in this context.

*Turner*, 59 F.3d at 1045–46 (citations omitted) (emphasis in original).

The Ninth Circuit reached the opposite conclusion in *Doe*, holding that government agencies are, as a matter of law, a single entity. In *Doe*, an FBI informant who was suing the FBI in tort for revealing his identity sought to offset his potential recovery against taxes he owed to the IRS. The debtor claimed that the United States was a single entity for purposes of setoff. The United States agreed. The Ninth Circuit responded:

> The United States reaches this position out of a commendable sense of fairness and reciprocity because it often seeks to be treated as a single unitary creditor under the offset provisions of 11 U.S.C. § 553. The United States has been successful in asserting such a position as a creditor. *See e.g., Luther v. United States*, 225 F.2d 495, 498 (10th Cir.1954). It is also treated as a single creditor when it asserts priority

for its debt. *See e.g., Small Business Administration v. McClellan*, 364 U.S. 446, 450, 81 S.Ct. 191, 194–95, 5 L.Ed.2d 200 (1960).

> Faced with these authorities and this reasoning, we now hold that as a matter of law, for purposes of waiver of sovereign immunity and setoff under 11 U.S.C. § 106, all agencies of the United States, except those acting in some distinctive private capacity, are a single governmental unit.

*Doe*, 58 F.3d at 498. For the following reasons, we reject the Tenth Circuit's analysis in *Turner* and extend the reasoning of *Doe* to the issue of mutuality and setoff under § 553.[4]

█ Although *Turner* recognizes the right of federal government agencies to setoff outside of bankruptcy, it nonetheless concludes that the mutuality requirement should be more narrowly construed in bankruptcy reorganizations. *Turner*, 59 F.3d at 1045. We find no support for this conclusion. In fact, the United States Supreme Court recently reaffirmed that "whatever right of setoff otherwise exists is preserved in bankruptcy." *Strumpf*, —— U.S. at ——, 116 S.Ct. at 289. In other words,

> [I]n deciding whether federal agencies stand in the same capacity for section 553 offsets, there is no authority for distinguishing between the capacity of parties in relation to each other outside of bankruptcy and that capacity following the filing of a bankruptcy petition.

*Small Business Admin. v. Rinehart*, 88 B.R. 1014, 1016 (D.S.D.1988), *aff'd in part, rev'd*

---

4. Although the *Doe* decision does not expressly decide the context of government agency mutuality under § 553, it is not clear that there is any basis to distinguish *Doe* on that ground. In fact, after the *Doe* decision was announced, the U.S. District Court for the Northern District of California recalled its decision in *Westamerica Bank v. United States*, 178 B.R. 493 (N.D.Cal.1995). In *Westamerica*, the court had held that government agencies did not satisfy the mutuality requirement of § 553. *Id.* at 496–97. After *Doe*, however, the court reversed its decision and withdrew its publication, stating:

> Despite our misgivings about the *Doe* decision our obligation as a lower court is to follow the

decisions of the Ninth Circuit. Although the *Doe* decision skirted § 553 and therefore is not on all fours with this case, we cannot, in good conscience, say that it does not materially upset (and reverse) our analysis of mutuality under § 553. In the aftermath of *Doe*, the law of the case doctrine notwithstanding, the wisest and most principled course is to revise our order on mutuality. Accordingly, this Court's Order of February 28 is revised to hold that mutuality does exist as between different government agencies for purposes of setoff under § 553.

*Westamerica Bank v. United States Maritime Admin.*, 1995 WL 606847 at *1 (N.D.Cal. Aug. 18, 1995).

*in part,* 887 F.2d 165 (8th Cir.1989). We agree that bankruptcy courts have no authority for construing the legal definition of mutuality more narrowly, as *Turner* suggests.

*Turner,* and other similar cases, seem to confuse the federal government's nonbankruptcy right to setoff with the issue of whether or not the bankruptcy court should, in its discretion, allow the government to exercise that right in bankruptcy. In *In re Hancock,* 137 B.R. 835, 846–47 (Bankr.N.D.Okla.1992), the court stated that:

> [Some cases] appear to confuse the power with the right. The *power* of governmental agencies to switch payments among themselves is established by both case law and statutes ... and is not in question here. The *right* of governmental agencies to switch payments among themselves in circumstances of bankruptcy is tested by bankruptcy law; and bankruptcy law provides that the power can be found inequitable and wrongful under the circumstances and denied or avoided.

*Id.* at 847. We believe that the proper framework is recognizing that government agencies satisfy the mutuality requirement; "[w]hat remains, nevertheless, is whether the Court should exercise its equitable discretion and determine whether to allow or disallow the setoff." *In re Lincoln,* 144 B.R. 498, 501 (Bankr.D.Mont.1992).

The organization of the agencies of the United States government supports a finding of mutuality. Title 5 of the United States Code defines Executive departments, Government corporations, and independent establishments, all of which are classified as "Executive agencies." 5 U.S.C. §§ 101, 104–105 (1994). Each of the agencies involved in this appeal[5] were established as Executive departments of the United States, not as separate juristic entities. *See* 5 U.S.C. § 101 (1994). As *Turner* recognizes, "all federal agencies draw from or contribute to a common pool of money, the U.S. Treasury." *Id.*

at 1045. Although *Turner* goes on to characterize federal agencies' relationships as that of corporate subsidiaries, we feel the more appropriate analogy is that of separate departments within a single corporation. Just as a large corporation has different departments—marketing, sales, accounting, personnel, etc.—with individual budgets and separate interests, so does the federal government. In both situations, each separate department must compete against the others for its share of the overall budget. Such is not necessarily the case with corporate subsidiaries, who are often expected to be self-sustaining, and whose fortunes are not necessarily tied to the parent's profitability.

■ For the foregoing reasons, we hold that as a matter of law, federal government agencies, with the exception of those acting in a distinctly private capacity, are a single entity for purposes of setoff under § 553.

■ Hawaiian offers two other arguments involving recent amendments to the Code which it claims support a finding of non-mutuality. Neither is persuasive. Hawaiian first argues that § 106(b) was added to the Code, and that this new subsection evidences congressional intent on the issue of mutuality. Section 106(b) states that a "governmental unit that has filed a proof of claim ... is deemed to have waived sovereign immunity with respect to a claim against such governmental unit...." 11 U.S.C. § 106(b) (1994). This argument is incorrect for two reasons. First, the 1994 amendments did not "add" a new § 106(b), it merely redesignated § 106(a) as (b) and added the words "that has filed a proof of claim in the case." The purpose of this amendment was to clarify that a governmental unit did not waive sovereign immunity with respect to a claim against the debtor unless and until it actually filed a proof of claim. Second, the language of this section merely begs the question of

5. The government agencies with claims against the Debtors are the Federal Aviation Administration, which is part of the Department of Transportation, *Department of Transportation Act,* Pub.L. No. 89–670, §§ 3, 6, 80 Stat. 931, 937 (1966); the United States Air Force, which is part of the Department of Defense, *National Security Act Amendments of 1949,* Pub.L. No. 81–216, §§ 2, 4, 63 Stat. 578, 579 (1949); the Department of Agriculture; and the Immigration and Naturalization Service, which is part of the Department of Justice. 8 U.S.C. § 1101(34) (1994).

whether the United States and its agencies are one governmental unit or not.

Hawaiian's second example—of 1994 amendments to § 101(41) to add the FDIC and the PBGC to the definition of "persons" who may serve on an official creditors committee—is equally non-persuasive.[6] Even those courts which hold that the United States is a single governmental unit for purposes of setoff do allow an exception to this general rule for agencies which act in a distinct private capacity. *See Doe*, 58 F.3d at 498. The FDIC as receiver is a prime example of this exception. *Id.* at 498, *FDIC v. Harrison*, 735 F.2d 408, 411 (11th Cir.1984); *see also In re Robbins*, 91 B.R. 879, 888 (Bankr.W.D.Mo.1988); *In re Butcher*, 32 B.R. 572 (Bankr.E.D.Tenn.1983) (FDIC is one entity in its corporate capacity and a second entity in its capacity as receiver of a bank who is a bankruptcy creditor).

B. *Did the Bankruptcy Court Abuse Its Discretion in Allowing Setoff?*

▄▄ Hawaiian argues that even if mutuality is found, the bankruptcy court abused its discretion by permitting the setoff. Courts which have denied setoff have done so for a variety of reasons. First, courts have denied setoff in cases where the creditor has acted inequitably. *See Cascade Roads*, 34 F.3d at 763–64 (affirming bankruptcy court's denial of setoff because the U.S. Forest Service had "stonewalled" on discovery and, "with knowledge of the merits of the debtor's position," caused eight years of litigation in numerous courts before "capitulating" on the eve of trial). Second, courts often deny setoff if setoff would jeopardize a debtor's ability to reorganize. *Turner*, 59 F.3d at 1045. This is especially true in cases involving farmers who have filed a chapter 12 petition. *See In re Lincoln*, 144 B.R. 498, 502–03 (Bankr.D.Mont.1992); *In re Rinehart*, 76 B.R. 746, 754 (Bankr.D.S.D.1987), *aff'd sub nom, Small Business Admin. v. Rinehart*, 88 B.R. 1014 (D.S.D.1988), *aff'd in part, rev'd in part*, 887 F.2d 165 (8th Cir.1989). Third, courts may deny setoff in a liquidation con-

text because it results in either a preference or priority over other unsecured creditors. *See Hancock*, 137 B.R. at 841. Hawaiian's only argument against allowing setoff in this case is that it is unfair to other unsecured creditors who will only receive stock in satisfaction of their claims.

This argument was considered, and rejected, by the bankruptcy court. We hold that this finding was not an abuse of discretion. First, § 553 clearly states that bankruptcy law does not affect a creditor's nonbankruptcy right to setoff. Therefore, Congress knew when it drafted the Code that § 553 would allow some creditors to receive a *de facto* priority over other creditors. If Congress thought that allowing setoff was *per se* unfair to other creditors, it would not have allowed discretionary use of setoff under § 553.

Second, § 553 actually reduces the scope of setoff available under pre-Code bankruptcy law. Before enactment of the Code, the only limitation on setoff was a denial of setoff if a creditor purchased a claim against the debtor after the filing of the petition for the purpose of obtaining a right of setoff. *See* Section 20 of the Bankruptcy Act of 1867. The current version of § 553 not only maintains that limitation, but extends it to claims obtained or debts incurred within 90 days of the filing of the petition. 11 U.S.C. § 553(a); *In re Southern Indus. Banking Corp.*, 809 F.2d 329, 332 (6th Cir.1987). In addition, § 553 prevents a creditor from improving his setoff position during the 90 days prior to bankruptcy. 11 U.S.C. § 553(b)(1) (1994). Congressional limitations on the right of setoff indicate that Congress is aware of the preferential and priority potential of setoff and has placed specific limitations on it. Aside from those specific limitations, however, Congress has left equitable setoff determinations to the bankruptcy court's discretion because, "[t]he Code recognizes the possible injustice in compelling a creditor to file its claim in full and accepting possible dividends thereon, while at the same time paying in full its indebtedness to the

---

**6.** Although Hawaiian is correct in asserting that the PBGC (and state pension guarantors) were added to the definition of "person" in 1994, the

FDIC has been included in this definition (for purposes of § 1102) since 1984.

estate." 4 *Collier on Bankruptcy* ¶ 553.02 at 553–11 (15th ed. 1996).

Hawaiian's argument that allowing setoff will result in preferred treatment of the government agencies is somewhat disingenuous because Hawaiian is undergoing a reorganization, not a liquidation. Under the terms of the confirmed plan, nonpriority unsecured creditors get only stock in payment on their claim. Even if the setoff was denied, the other unsecured creditors would not receive more—the Debtors will retain the entire $215,000. Therefore, the unsecured creditors are not disadvantaged by allowing setoff, absent a showing that allowing setoff would jeopardize the Debtors' reorganization and render its stock worthless.[7] While it is true that the government agencies will receive a priority distribution, this by itself does not mandate denial of setoff absent other compelling factors. Therefore, it was not an abuse of discretion to allow setoff merely because the government obtains a priority.

█ In this case, none of the concerns associated with denying setoff are present. The bankruptcy court held that the government agencies did not act inequitably, and Hawaiian does not dispute this finding. Hawaiian has not alleged that allowing setoff would irreparably harm its opportunity to reorganize. Because Hawaiian is undergoing a reorganization, the other unsecured creditors are not being denied a higher return. Finally, the fact that the Code allows setoff shows that mere priority of one creditor over another does not by itself mandate a denial of setoff.

## V. CONCLUSION

For the foregoing reasons, we **AFFIRM** the bankruptcy court's decision that the agencies involved have a nonbankruptcy right to setoff and its decision to allow setoff.

---

**7.** Of course, this analysis would change in a chapter 7 case where the other unsecured creditors would receive a higher percentage distribution if setoff were denied. *See Hancock,* 137 B.R. at 841.