### In re FLORIDA ENGINEERED CONSTRUCTION PRODUCTS, CORP., Debtor.

**Bankruptcy No. 91–11105–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 5, 1993.

Domenic Massari, Tampa, FL, for debtor.

Mike Olson, Tax Collector of Pasco County, Steven Berman, Tampa, FL, for movants.

Office of the U.S. Trustee, Tampa, FL.

NCNB National Bank of Florida, c/o Thomas Lash, Tampa, FL.

Bernard Morse, Tampa, FL, for Creditors Committee.

### ORDER ON 1992 AMENDED APPLICATION FOR PAYMENT OF 1991 TANGIBLE PERSONAL PROPERTY AND REAL PROPERTY TAXES AS AN ADMINISTRATIVE EXPENSE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an Amended Administrative Expense Application filed by Mike Olson, Pasco County Tax Collector (Tax Collector). Tax Collector seeks allowance of 1991 tangible personal property and real property tax obligations of Florida Engineered Construction Products, Corp. (Debtor) as an administrative expense pursuant to § 503(b)(1)(B). The facts relevant to the resolution of this controversy as they appear from the record are as follows:

On August 29, 1991, Debtor filed his Petition for Relief under Chapter 11 and continued to operate its business as a Debtor-in-Possession. On November 2, 1992, Tax Collector filed an Application for Administrative Expense, and sought payment for taxes on the Debtor's tangible personal property for 1991. In its Application, Tax Collector sought payment of $4,497.62, consisting of $4,070.24 for tangible personal property tax assessed on November 1, 1991 and interest in the amount of $427.38, plus 18% interest per year from October 30, 1992. Tax Collector also requested payment of 1992 tangible personal property taxes, plus interest.

In its Response to Tax Collector's original Application the Debtor contended, first, that the notice assessing tangible personal property tax liability of $4,070.24 for account no. W–00019–000 included taxes for both pre- and post-petition periods; second, that on March 20, 1992, Debtor paid the Tax Collector $8,504.99, representing tangible property taxes for the post-petition period of September 1991 through December 1991 for several account numbers, including $1,356.75 on account no. W–00019–000; and third, that request for payment of taxes for the calendar 1992 was not even due and owing until April 1, 1993.

In its Amended Administrative Expense Application, Tax Collector first requested $4619.72 for 1991 tangible personal property taxes, consisting of the $4,070.24 in taxes assessed on November 1, 1991 and $549.48 in interest, plus interest computed at 18% per year from December 31, 1992. Second, Tax Collector requested 1991 real property taxes in the amount of $25,658.73, $21,444.72 of which was assessed on November 1, 1991 plus $4214.01 in interest, plus 18% annual interest from December 31, 1992. Tax Collector also requested 1992 taxes for tangible personal property and real property, plus interest.

Tax Collector, in the Amended Application, asserted that the $8,504.99 paid by the Debtor represents a prorated amount of the total 1991 personal property and real property taxes. Tax Collector asserted that the Debtor was attempting to separate the tax obligations into pre- and post-petition periods, tendering only a partial payment for a prorated amount of the 1991 personal property and real property taxes owed by Debtor.

Based on the foregoing, Tax Collector contends that the taxes accrued during the tax year 1991 and should be recognized as cost of administration pursuant to § 503(b)(1)(B) of the Bankruptcy Code. In opposition, Debtor maintains that all taxes accrued post-petition have been paid in full.

■ Concerning, first, the claim for the 1992 taxes, this Court denied the request without prejudice, because the taxes did not become legally due and owing until April 1, 1993 and thus the request for payment was immature. This leaves for consideration whether the 1991 tangible personal property and real property taxes shall be accorded cost of administration status pursuant to § 503(b)(1)(B)(i) of the Bankruptcy Code.

The allowance of an administrative expense is governed by § 503 of the Bankruptcy Code, which provides in pertinent part as follows:

§ 503. Allowance of administrative expenses.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or

. . . . .

Unfortunately, neither counsel for the Debtor nor for the Tax Collector focused on the real issue, which is whether or not property taxes on real or personal property accruing during the tax year when the petition was filed and owed by the Debtor may be accorded administrative claim status pursuant to § 503 of the Bankruptcy Code. To answer this question, the initial inquiry must be directed at the legal character of property taxes in general.

It cannot be gainsaid and it is clear that property taxes, commonly referred to as ad valorem taxes, are accorded secured status by Statute, and are secured by a lien on the particular property which generated the tax in question. *Fla.Stat.* § 192.053 (1991). The lien securing the property taxes operates retroactively and becomes fixed on the property as of January 1 of a tax year, even though the property tax is not yet due and owing until April 1st of the following year. Thus by operation of the relation-back doctrine, *Fla.Stat.* § 192.053 and § 192.042 (1991), the claim of Tax Collector is clearly a secured claim, albeit a lien which attached to the property in question as of the first day of the tax year, securing an amount yet to be determined. This being the case, it is clear that the Tax Collector is holding a claim secured by a lien on the property which generated the tax.

■ Clearly, a claim cannot be secured and unsecured at the same time unless the claim has been bifurcated pursuant to § 506 of the Bankruptcy Code. The application of § 506, of course, has no relevance to a claim for property taxes secured by a lien, simply because the obligation to pay property taxes represents only a charge on the particular property and does not create a personal liability for the owner of the property in question. For instance, if the property tax is not paid, the Tax Collector's remedy is to sell the property, but he may not seek a money judgment against the owner of the property and attempt to collect the judgment by levy on other property on which the Tax Collector had no lien. These conclusions lead to the ultimate question which is, may a secured claim be accorded status of cost of administration pursuant to § 503 of the Bankruptcy Code and given first priority pursuant to § 507(a)(1)?

Section 503(b)(1)(B)(i) accords administrative claim status for taxes incurred by the estate after commencement of the case, other than unsecured claims for taxes specified in § 507(a)(7), i.e., pre-petition taxes. Even a cursory analysis of the entire § 503 leaves no doubt that all claims recognized under this Section are unsecured claims, incurred by the estate after commencement of a case. There is no evidence to assume that Congress ever intended to include secured claims within the scope of § 503 which, by the way, enjoy a rank and a treatment even higher than allowed administrative expenses.

■ This Court is unaware of any authorities which support the proposition that property taxes secured by a lien and incurred pre-petition may be awarded cost of administration status pursuant to § 503. The bankruptcy court for the District of Columbia considered the same issue, albeit indirectly, and arrived at that very same conclusion in the case of *In re Carlisle Court, Inc.*, 36 B.R. 209 (Bankr.D.C.1983). In all concerns this case had a different setting not present in this instance. The bankruptcy court in *Carlisle* held that post-petition property taxes *incurred by the estate assessed post-petition* (emphasis supplied) are not entitled to secured status because of the prohibition against fixing liens in estate property by § 362(a)(4). Based on this, the court concluded that these taxes are entitled to administrative expense status pursuant to § 503(b)(1)(B). *Carlisle* did not involve property taxes incurred by the Debtor prior to the commencement of the case, but were incurred by the estate after the commencement of the case. This being the case, it is fair to conclude from *Carlisle* that property taxes incurred by the Debtor, prior to the commencement of the case and secured by a lien attached to the property pre-petition are not entitled to be allowed as a claim of administrative expense pursuant to § 503 of the Bankruptcy Code.

■ Since it is clear under local law that property taxes are secured by a lien which operates retroactively and represents a fixed charge, albeit unliquidated, on the property which generated the tax as of the first day of the tax year, the taxes under consideration are secured claims and therefore cannot be accorded administrative cost status under § 503(b)(1)(B).

Based on the foregoing, this Court is satisfied that Tax Collector's request for

allowance of the taxes in question is not supportable and therefore cannot be allowed as administrative expense. Having resolved this, it is unnecessary to determine at this time what amount, if any, of the taxes are owed by the Debtor for the year in question.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Application of the Tax Collector for allowance of administrative expense of the property taxes, both real and personal, attributable to the tax year 1991 is hereby disapproved without prejudice, and the Tax Collector may seek to enforce in rem rights against the subject property in the manner provided by law if so deemed to be advised.

DONE AND ORDERED.