In re Miguel MEDINA and Vicki Kathleen Medina, Debtors.

UNITED STATES of America, Internal Revenue Service, Appellant and Cross–Appellee,

v.

OFFORD FINANCE, INC., Miguel Medina, and Vicki K. Medina, Appellees and Cross–Appellants.

BAP No. OR–95–1535, OR–95–1616 (Cross–Appeal). Bankruptcy No. 693–6202–PSH11.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 23, 1996.

Decided Dec. 23, 1996.

---

Virginia Cronan Lowe, U.S. Department of Justice, Tax Division, Washington, DC, for U.S. (I.R.S.).

Larry C. Hammack, Crain, Austin & Guy, Medford, OR, for Offord Finance, Inc.

Before: VOLINN, JONES, and HAGAN, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

### OVERVIEW

The Internal Revenue Service (IRS) moved for relief from the automatic stay to apply by way of set-off to the debtors' tax liability certain proceeds arising from contracts entered into between Medina Reforestation (Medina) and the United States Department of Agriculture (USDA). Appellee, Offord Financing, Inc. (Offord), which financed the debtors, claims priority to the payments against the IRS by virtue of a security interest or assignment.

### BACKGROUND FACTS

The debtors, Miguel and Vicki Medina, are husband and wife. During the periods at issue, Miguel owned Medina, a proprietorship that planted and maintained trees on forest lands under reforestation contracts with the United States Forest Service through the USDA.[1] The proceeds of three of these contracts are involved here.

Pursuant to an April, 1993, agreement between Offord and Medina, Offord provided financing to Medina by paying Medina 95% of the value of invoices submitted to the USDA by Medina in exchange for Medina's rights in the invoices. The court below found that Offord took an absolute assignment of Medina's interest in some of the invoices and had only a security interest in the proceeds of other of the invoices. *See In re Medina*, 177 B.R. 335, 345 (Bankr.D.Or. 1994). Offord perfected its security interest

---

1. In addition, Vicki owned Vicki Medina Church Company, a similar proprietorship that is not at issue on this appeal.

in the latter contracts by recording on April 16, 1993. Offord notified the IRS of the contract assignments on May 13 and 14, 1993.

The debtors filed their Chapter 11[2] case on May 17, 1993.[3] The IRS filed a timely proof of claim of over $730,000 for personal income taxes and FICA payments owed for a period of several years.[4] Because the debtors had not filed all of their tax returns, the IRS' proof of claim included estimated amounts. Offord timely filed a proof of claim for nearly $90,000.

At the time the debtors filed bankruptcy, the USDA had not paid for all of the work performed.[5] The IRS moved for relief from the stay to apply the unpaid amounts from the USDA contracts against the debtors' tax liability. Offord claimed priority to these funds. The debtors do not claim the contract proceeds.

During a telephone hearing prior to its ruling, the bankruptcy court indicated it wanted to verify some of the IRS's claims and asked the IRS to provide tax returns filed post-petition by the debtors for pre-petition taxes. In response to this request, the IRS submitted to the court four returns filed by the debtors after bankruptcy for pre-petition taxes (the "requested returns").

In a published opinion, the bankruptcy court ruled that, as a prerequisite for offset, debts must be valid, enforceable, mutual and liquidated. *See Medina*, 177 B.R. at 349. The court concluded that Medina's debt to

the IRS was valid, enforceable, and of a mutual character. However, the court found most of the IRS's claims were not liquidated. Thus, of an approximate total of $750,000 shown on the IRS's proof of claim, the court granted relief from the automatic stay to allow the IRS to set off just over $50,000.[6] The court ordered the balance of the payments due under the contracts (approximately $68,000) to be paid to Offord.

In a motion to alter or amend the court's judgment, the IRS offered evidence to justify its proof of claim, which included tax returns filed by the debtors pre-petition and therefore not submitted to the court (as distinguished from those returns the debtors filed following bankruptcy for pre-petition tax periods that the court requested and the IRS provided). In addition, the IRS argued that the court made minor computational errors.

In a letter opinion following rehearing, the court corrected the computational errors, but refused to hear any evidence about how the IRS arrived at its figures; the court ruled that none of the evidence the IRS sought to enter was "newly discovered" within the meaning of Fed.R.Civ.P. 59: "all is [sic] evidence that was in the possession of the IRS or was available upon discovery to the IRS and that it chose, for whatever reason, not to introduce."

Generally when the IRS assesses a tax, it is considered for bankruptcy purposes to be a definite amount owed and, therefore, liquidated. Although the trial court recog-

---

2. Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "rule" or "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure §§ 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

3. The debtors had previously filed a Chapter 13 case which was dismissed on May 6, 1993. The IRS had given notice of a sealed bid sale of the debtors' property prior to the Chapter 13 filing, which was stayed by virtue of the Chapter 13. After dismissal, the IRS again filed notice of sale which was again stayed by virtue of the Chapter 11 filing on May 17, 1993.

4. The IRS's June, 1993 proof of claim has been amended several times. The latest proof of claim is for over $750,000.

5. The USDA issued checks payable to Medina for some of the work performed. These uncashed checks are currently held by the debtors' attorney pending resolution of this appeal. In addition, the debtors in possession have cashed some checks issued on these contracts and used the proceeds as cash collateral. This use is not at issue in this appeal.

6. The approximately $50,000 in setoffs were to come from the contract payments held by the USDA and, if necessary, the checks held in trust by the debtors' attorney. In addition, the court found the IRS had a valid tax lien on the foregoing contract payments in the amount of $18,-975.08 and the IRS was granted relief to foreclose that lien.

nized this fact, it concluded in its letter ruling that where offset against a derivative third party is involved, the rule changes: [7]

> this tax rule should not apply where the IRS seeks to use its right of offset to defeat the rights of third parties to funds due to the debtor. In those cases ... a tax liability is not 'liquidated' for purposes of setoff when an amount is assessed unless the IRS can provide evidence showing a reasonable basis for the assessment, either in the form of a filed tax return or other evidence of the basis upon which the assessment rests.

In addition, the court stated that "under § 553 the decision of whether to allow setoff is within the sound discretion of the court" and that the "court may disallow offset to avoid unfair treatment of other creditors." The court stated:

> it would be manifestly unfair to Offord to allow the IRS to offset assessed taxes unless the IRS has shown that the assessment was based either on a pre-petition filed return or some other reasonable basis absent a filed return and Offord had a opportunity to challenge the accuracy of the amounts assessed.

Finally, the court did not allow the IRS to set off amounts owed to it based on two of the requested returns because it found that they included post-petition taxes.

Offord requested that the trial court apply the doctrine of marshalling and require the IRS to satisfy its claims out of the proceeds of the real property on which it had a tax lien. The court stated that it was unable to apply the doctrine because it did "not yet know the amount of the government's allowed tax claim." *Medina*, 177 B.R. at 355. It noted "that if the tax claim, as allowed, is close to the size stated in the government's proof of claim, depending on the number and value of assets otherwise available to the IRS to satisfy the debt, marshalling might be a useless act. . . . [and therefore] Offord would not benefit from application of the doctrine." *Id.*

The IRS filed this timely appeal.[8] Offord filed a timely cross-appeal arguing that the bankruptcy court erred when it permitted setoff and when it refused to apply the doctrine of marshalling.

## ISSUES

Whether the court erred when it refused to lift the stay to allow the IRS to set-off its claim against the debtors against the money the USDA owed to the debtors.

Whether the court erred when it declined to apply the doctrine of marshalling to the IRS's claims.

## STANDARD OF REVIEW

The disallowance of a setoff is within the discretion of the trial court and will not be set aside unless found to be a clear abuse of discretion. *In re Buckenmaier*, 127 B.R. 233, 236 (9th Cir. BAP 1991). The bankruptcy court abuses its discretion where its ruling is based on an erroneous view of the law or on a clearly erroneous finding. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990).

## DISCUSSION

A creditor's ability to offset a debt owed to a debtor against a claim it has against the debtor is governed by section 553.[9] Section 553 does not create, but mere-

---

**7.** The court, in its letter ruling, stated that the "rule that an assessment issued on an un-filed return is presumptively correct works well in the context of disputes between the IRS and non-filing taxpayers" because the taxpayers, unlike third parties, have access to documents that could arguably prove that the assessment is incorrect.

**8.** Upon rehearing, the court increased the amount found to be secured by the IRS' tax lien. The IRS' opening brief raises the amount of the IRS' total secured lien as an issue; however, the

IRS does not provide a substantive argument and the bankruptcy court's ruling will stand. *See Miller v. Fairchild Indus.*, 797 F.2d 727, 738 (9th Cir.1986) (We "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.").

**9.** Section 553 provides in pertinent part that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the

ly preserves, a creditor's rights under non-bankruptcy law.[10] *See In re Bacigalupi, Inc.,* 60 B.R. 442, 445 (9th Cir. BAP 1986); 4 *Collier on Bankruptcy,* ¶ 553.02 at 553–10 (15th ed. 1996).

The bankruptcy court held that, to be offset, debts must be valid, enforceable, mutual and liquidated.[11] *Medina,* 177 B.R. at 349. On appeal, Offord argues that there is no mutuality of obligation between it and the IRS while the IRS argues that the bankruptcy court applied an incorrect definition of liquidated; according to the IRS, under the appropriate definition, all of its claims are liquidated.

*Mutuality of debts and claims.*

■ Offord's claim that there is no mutuality of obligation [12] between the federal government's claims and the debts it owes because this is a "triangular" transaction—that is, the IRS is attempting to set off a debt it owes to Offord against a claim it has against Medina—is incorrect. The debtors cannot assign any greater rights than they possess. On appeal, Offord does not dispute that, had the debtors not assigned their right to receive payment under the USDA contracts, the IRS would be permitted to set off the debtors' tax liability against the amount due the debtors on the USDA contracts. If the debtors would be subject to the IRS's right

of setoff, so must Offord, which is only asserting a derivative right. *See In re Defense Services, Inc.,* 104 B.R. 481, 484–85 (Bankr. S.D.Fla.1989) (on similar facts, allowed IRS to set off debt that had been assigned). *But see In re Fairfield Plantation,* 147 B.R. 946 (Bankr.E.D.Ark.1992) (on similar facts, did not allow the IRS to set off debt that had been assigned). We believe the *Defense Services* case to be the better reasoned.

Assignees of debts may be able to avoid the assignor's defenses when the claims mature following notification of the assignment. *See* Rest. of Contracts, § 336 cmt. d (1979) ("After receiving notification of an assignment, an obligor must treat the assignee as owner of the right and cannot assert against him a defense or claim arising out of a subsequent transaction. . . . [or] set off an unrelated claim which matures after notification is received."). *See also* 4 *Corbin on Contracts* § 897 at 600–601 (1951 & Supp.1993) (stating, relative to assignment, that at common law, if the claim of setoff arises out of a collateral transaction prior to notice of the assignment, it is available against the assignee if it existed as a matured claim at the time of the assignment).

■ The court below found that the IRS' claims against the debtors were matured at the time of notification.[13] *See Medina,* 177

commencement of the case." *See also* Section 542(b) (stating, with exceptions not relevant here, that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor").

10. The trial court ruled that Section 553 applied only to those invoices assigned to Offord because the debtors had no interest in the invoices purchased by Offord. *See Medina,* 177 B.R. at 355.

11. The court below relied on *In re Hancock,* 137 B.R. 835, 839 (Bankr.N.D.Okla.1992) for the proposition that to be setoff debts must be liquidated. This is not the rule in this circuit. *See In re Buckenmaier,* 127 B.R. 233, 239 (9th Cir. BAP 1991) (stating that "the Bankruptcy Code, with its expansive definitions of the terms 'claim' and 'debt,' protects the right of a creditor to assert a setoff despite the lack of certainty that the claim will actually accrue").

12. The concept of mutuality contains several elements. To be mutual the debts must be in the same right and between the same parties, standing in the same capacity. 4 *Collier on Bankruptcy* ¶ 553.04[2] at 553–22 (15th ed. 1996).

13. The dissent disagrees with the majority opinion to the extent "all of the IRS claims were matured." Section 6151 of the Internal Revenue Code provides, with exceptions not relevant here: "when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed, and shall pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return)." 26 U.S.C. § 6151. The Ninth Circuit Court of Appeals has interpreted this section to provide that taxes are due and payable on the due date of the return, not on the date of assessment or some other date. *Pan American Van Lines v. United States,* 607 F.2d 1299, 1303 (9th Cir.1979). *See also Federal Deposit Ins. Corp. v. United States,* 654 F.Supp. 794, 806 (N.D.Ga.

B.R. at 354. Nevertheless, as indicated, Offord did not notify the IRS about the assignments until after virtually all of the work had been performed by Medina and all but one of the invoices had been submitted to the USDA. Thus, because the requisites of mutuality and maturity existed prior to notification by the assignee, the bankruptcy court correctly found that Offord was subject to the IRS's claim of a right to assert setoff.

### Liquidity of IRS claims.

■ However, the bankruptcy court found that the IRS's claims were not liquidated because the IRS did not "provide evidence showing a reasonable basis for the assessment, either in the form of a filed tax return or other evidence of the basis upon which the assessment rests." [14] The court indicated that, had the IRS been asserting setoff against the debtors themselves, rather than against Offord, the result may have been different. In addition, the court refused to hear evidence offered by the IRS on rehearing because it was not "newly discovered" within the meaning of Fed.R.Civ.P. 59.

The bankruptcy court committed reversible error when it denied the IRS claims for the reason that the IRS had not submitted evidence of the basis for its assessments. The IRS relied on both the presumptive validity of a filed proof of claim and on the court's statement that it wished to only review the requested returns.

■ A proof of claim executed and filed in accordance with the applicable Bankruptcy Rules is prima facie evidence of the validity and amount of the claim. Fed. R.Bankr.P. 3001(f). Under section 502(a), a proof of claim as filed is "presumptively valid unless a party in interest submits an objection." *In re Hobdy*, 130 B.R. 318, 320 (9th

1986) ("Under Section 6151 of the Internal Revenue Code, regardless of when federal taxes are actually assessed, the taxes are considered as due and owing, and constitute a liability as of the date the tax return for the particular period is required to be filed.").

14. The Ninth Circuit Court of Appeals and the BAP have held that, for purposes of section 109(e), a debt is liquidated if it is capable of "ready determination:"

Cir. BAP 1991). *See also In re Consolidated Pioneer Mortgage*, 178 B.R. 222, 225 (9th Cir. BAP 1995). Once such a claim has been filed, the burden then shifts to the objecting party to present evidence to overcome the prima facie case. *In re Murgillo*, 176 B.R. 524, 529 (9th Cir. BAP 1995); *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991) ("the allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish a claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves."). In addition, assessments made by the IRS are presumed to be correct. *United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 3025–26, 49 L.Ed.2d 1046 (1976); *Paccar, Inc. v. Commissioner*, 849 F.2d. 393, 400 (9th Cir.1988).

None of the parties has ever disputed the existence or amount of the debtors' liability to the IRS. Nevertheless, the trial court *sua sponte* determined that because the IRS did not initially provide sufficient information to prove its claim it would be precluded from doing so. However, when examining the existence, validity or enforceability of the claim, the judge should have provided an opportunity to the IRS to show whether the filed proof of claim was accurate and valid. None of the parties questions the trial court's power to do so.

The dissent states that "[c]ourts which have addressed the issue of whether a tax debt was liquidated have required some showing of proof beyond the IRS' proof of claim." However, the cases cited in support of this statement turned on challenges by

[T]he definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts of liability. On this issue, the bankruptcy judge has the best occasion to determine whether a claim will require an overly extensive hearing.

*In re Wenberg*, 94 B.R. 631, 634–35 (9th Cir. BAP 1988), *aff'd*, 902 F.2d 768 (9th Cir.1990).

parties to the IRS claim requiring it to put on proof. *See In re Ekeke,* 198 B.R. 315, 317 (Bankr.E.D.Mo.1996) ("debtors objected to the IRS claim"); *In re Elrod,* 178 B.R. 5, 6 (Bankr.N.D.Okla.1995) ("Debtors filed an objection to the allowance of the claim"). As we stated above, the parties do not dispute that the judge has the power to determine the existence, validity or enforceability of the claim. Here, as explained above, the IRS had filed a valid proof of claim and no party has objected to it. Given this circumstance, we believe that if the IRS claim as submitted was questionable, the IRS should have been afforded an opportunity to be heard prior to its rejection by the court.

 The bankruptcy court characterized as equitable its refusal to allow the IRS to set off its claims against the USDA's debts. Although the allowance or disallowance of a set off is a decision which ultimately rests within the sound discretion of the trial court, *see Bacigalupi,* 60 B.R. at 445, the setoff right "is an established part of our bankruptcy laws ... [and] should be enforced 'unless compelling circumstances ...' require otherwise." *In re Buckenmaier,* 127 B.R. 233, 237 (9th Cir. BAP 1991) (quoting *Bohack Corp. v. Borden, Inc.,* 599 F.2d 1160, 1165 (2d Cir.1979)). Because the court did not cite any compelling circumstances for not allowing the setoff (other than those discussed above), the court's refusal to allow set off was an abuse of discretion and the case should be remanded to allow the court to apply the appropriate standards.[15]

In addition to these principal issues, the parties raise three additional issues on appeal.[16]

*Rejection of forms filed by IRS.*

 As discussed above, the IRS submitted tax forms filed by the debtors post-petition for pre-petition taxes. The court below did not allow the IRS to set off any of its claims that were based upon the debtors' 1993 Forms 940 and 941 because the pre-printed forms ostensibly covered post-petition periods and therefore "on their face, purport to include post-petition obligations of an unknown amount." However, the debtor's accountant indicated on each of the forms that the applicable period ended May 17, 1993, the date the debtors filed their petition in bankruptcy. Thus, it was clearly erroneous for the court to rule that the forms included post-petition obligations.

*Applicability of doctrine of marshalling.*

 The doctrine of marshalling is an equitable remedy which the bankruptcy court may apply in its discretion. In Oregon, it has been defined as a "basic principle of equity that where a senior creditor has recourse to two funds and a junior creditor has recourse to but one of them, the senior creditor must seek to satisfy itself first out of the fund in which the junior creditor has no interest." *Community Bank v. Jones,* 278 Or. 647, 678, 566 P.2d 470, 488 (1977). The bankruptcy court correctly found that it could not apply the doctrine of marshalling; the real property—which is valued at approximately $175,000 and has approximately $90,000 in liens superior to the IRS's liens—is insufficient to satisfy the IRS claims which total more than $750,000.

*Disallowance of penalties and interest on liquidated debt.*

 When determining the amount of the IRS's setoff, the bankruptcy court did not

---

15. The dissent, while acknowledging that an assignee has "a duty to protect itself against potential setoff claims before taking an assignment by checking for recorded IRS liens or requesting copies of the assignor's filed tax returns," indicates that Offord should nevertheless be protected in this case: where, as here, there are no recorded liens and the debtor did not file tax returns, the "assignee is helpless to protect itself from an offset." Factors function in an environment where they must look for and be alert to warning signs. Had Offord requested copies of filed tax returns from the debtors (there is no evidence it did), the fact that Medina could not produce certain returns would have put it on notice that something was amiss, including the possibility of unassessed taxes. In any event, it was not the obligation of the IRS to see to it that tax returns were filed. If the debtor was errant in this respect, the equities are at least as favorable to the IRS as they are to Offord.

16. The dissent appears to raise an issue to the effect that an IRS tax lien has been overridden by a perfected security agreement in favor of Offord. This issue was not argued by Offord on appeal and therefore we do not consider it here.

allow the IRS penalties and interest due on one of the requested returns (the debtors' individual 1991 tax return) because the IRS's initial proof of claim did not contain a claim for penalties and interest. Because the IRS had not filed an amended proof of claim at the time of the hearing, the court stated that the initial proof of claim was the only proof of claim in evidence at the hearing. The IRS argues, without providing legal support, that interest and penalties on a liquidated tax liability, such as that found on the debtor's individual 1991 tax return, must also be liquidated because they "are merely mathematical computations based on the tax liability."

 Because of our ruling on the principal issue, it is not necessary to resolve this issue on appeal. Fed.R.Civ.P. 15 provides that leave to amend "shall be freely given when justice so requires" and allows an amended pleading to relate back to the date of the original pleading whenever the new claim or defense arises out of the same conduct, transaction or occurrence. The amendment of claims process is analogous to amendment of pleadings under Fed.R.Civ.P. 15. *In re Solari*, 63 B.R. 115 (9th Cir. BAP 1986). Therefore, on remand, the IRS should be provided the opportunity to amend its proof of claim and request penalties and interest on the original claim.

## CONCLUSION

The trial court appropriately found that the IRS was entitled to offset claims for which the debtors had filed tax returns against moneys the USDA owed to the debtors. However, the court improperly denied the IRS its right to prove the basis for its offset. The court should have allowed the IRS to provide evidence of the taxes owed by the debtors so that its offset claim could be heard. The trial court's rulings allowing setoff of certain IRS claims and denying application of marshalling are AFFIRMED; the trial court's ruling denying setoff of IRS claims is VACATED. We REMAND for further proceedings consistent with this opinion.

JONES, Bankruptcy Judge, dissenting:

I respectfully dissent from the majority opinion. I would affirm the bankruptcy court based on the following grounds.

### A. *Liquidity*

The bankruptcy court held that the IRS's claims were not liquidated because the IRS did not "provide evidence showing a reasonable basis for the assessment" of its claim. The majority holds that the IRS may rely on the presumptive validity of its proof of claim in order to meet its burden of proof for setoff. I disagree.

The burden of proving the right to setoff rests with the party asserting that right. *In re County of Orange*, 183 B.R. 609, 615 (Bankr.C.D.Cal.1995). In order to meet its burden of proof, a creditor must show that the debt was liquidated. Although the term liquidated is not defined in the Bankruptcy Code, the Ninth Circuit has stated that "the question of whether a debt is liquidated turns on whether it is subject to 'ready determination and precision in computation of the amount due.'" *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987). A debt is not subject to "ready determination" if the court must conduct an extensive and contested evidentiary hearing in which substantial evidence is required to establish the amount of the debt or liability, as opposed to a simple hearing on the amount of the debt. *In re Wenberg*, 94 B.R. 631, 634 (9th Cir. BAP 1988), *aff'd*, 902 F.2d 768 (9th Cir.1990). The bankruptcy judge is in the best position to determine whether an extensive hearing is required. *Id.* at 635.

The majority holds that the IRS met its burden of proof through the prima facie validity of its proof of claim, or at least the court should have allowed the IRS an opportunity to show how it arrived at its figures. Courts which have addressed the issue of whether a tax debt was liquidated have required some showing of proof beyond the IRS's proof of claim. In *In re Ekeke*, 198 B.R. 315, 318 (Bankr.E.D.Mo.1996), the court required that the IRS make a prima facie showing as to the amount of its claim regarding calculation of the debt through the debtor's tax returns. This showing was in addi-

tion to the IRS's filed proof of claim. In *In re Elrod*, 178 B.R. 5, 6 (Bankr.N.D.Okla. 1995), although the IRS had filed a proof of claim, the court held that the tax debt was unliquidated because the court could not determine the amount of the IRS's claim without holding an evidentiary hearing.

The IRS's proof of claim is irrelevant. More relevant is the rule that a tax assessment is presumptively correct. The bankruptcy court stated that the rationale to this rule is that if the assessment is incorrect, the taxpayer has access to the documents which could dispute the correctness of the assessment. However, the court stated that this same rationale is not applicable when the IRS seeks to use its right of setoff to defeat the rights of third parties. The third party will not have access to the documents required to dispute the validity of the assessment. In such a case, the court held that the tax debt will not be considered liquidated unless the IRS can show a reasonable basis for the assessment, such as a filed tax return or otherwise. I agree.

The bankruptcy court did give the IRS an opportunity to provide a basis for its assessments. After the initial hearing on the IRS's motion, the bankruptcy court was made aware of the fact that the debtors had filed tax returns for pre-petition tax periods after the original proof of claim was filed. The court, in a telephonic conference, requested copies of these returns so that the court could review the amount of tax that the debtors claim they owed. The court held these taxes liquidated. If the IRS had other returns or other evidence which would substantiate the precise amount of the remaining tax debt, the IRS should have submitted its evidence, as it was the IRS who was responsible for meeting its burden of proof. The burden was not on the court to specifically request evidence of which the court was not aware, especially where much of the tax debt was for years in which no return was filed. The bankruptcy court held as liquidated the tax debt for years for which a filed return was submitted to the court. The court found that the IRS had not met its burden of proof on the balance of the tax debt and held the debt to be unliquidated.

The bankruptcy court was in the best position to determine the extent of the evidence needed to determine the precise amount of the debt. The court determined that the IRS would have to submit some evidence supporting the assessment because it was asserting its right to offset against a third party. The IRS did not submit the necessary evidence and the court was not required to specifically request each document that would support the assessments. The balance of the tax debt could not be precisely determined by simple mathematical computation and was not subject to ready determination as most of the debt was for years in which no return was filed. As such, the bankruptcy court properly held that the balance of the debt was not liquidated.

### B. *Maturity*

The majority states that "[t]he court below correctly found that the IRS claim against the debtors were matured at the time of notification." This is a mischaracterization of the bankruptcy court's holding. The bankruptcy court held that the IRS held a matured claim only for liquidated taxes. *Medina*, 177 B.R. at 354. The court stated, "[t]he IRS held a matured claim against the debtors for the balance of the liquidated taxes. Therefore, as to those taxes for which setoff is otherwise available under nonbankruptcy law, the IRS has priority over Offord as assignee." *Id.* The only claims which the court held to be liquidated and therefore available for setoff were for tax debt for years in which the debtor filed a return. Thus, the bankruptcy court held that only those tax debts for years in which a return was filed were liquidated and matured. This distinction is of importance as the majority opinion holds that the bankruptcy court abused its discretion in ruling certain IRS claims to be unliquidated. Claims for tax debt in which no return has been filed or no assessment made are not matured for purposes of setoff in these circumstances, where a third party intervenes and perfects its lien. The IRS's tax lien arises only at the time that assessment is made pursuant to § 6321 of the Internal Revenue Code. Where the debtor has filed a return, which is a self-

assessment, the claim is matured. I agree with the bankruptcy court that the IRS claims for years in which a return was filed were both liquidated and matured. However, to the extent that the majority opinion holds that all of the IRS claims were matured, I disagree.

### C. *Discretion of the bankruptcy court*

The law is clear that the ultimate decision on the allowance of setoff rests within the discretion of the bankruptcy court. The majority opinion holds that the bankruptcy court abused its discretion because it did not cite any compelling circumstances for disallowing the setoff. In this case, there were sufficiently compelling circumstances to deny the setoff. The IRS received notification of the debtor's assignment to Offord while it held an unliquidated, unrecorded tax debt—in essence a secret lien. *See* C. Richard McQueen and Jack F. Williams, *Tax Aspects of Bankruptcy Law and Practice,* § 8.07 at 8–9 (2d ed. 1995) (stating that until the IRS properly files a notice of lien, the IRS holds a secret lien). Offord was helpless to protect itself against the IRS's claim to offset based upon a secret lien. An assignee has a duty to protect itself against potential setoff claims before taking an assignment by checking for recorded IRS liens or requesting copies of the assignor's filed tax returns. If there are no recorded liens, as in this case, and if the debtor did not file any returns, the assignee is helpless to protect itself from an offset based on a secret lien. In the meantime, here the assignee extended new value necessary for the debtor to complete its reforestation contracts while unknowingly subjecting itself to the IRS's claim for offset.

The majority states that if a potential assignee requests copies of filed tax returns which are not produced, the assignee is put on notice that something is amiss, such as the possibility of unassessed taxes. This suggestion however, flies in the face of the wealth of recording lien perfection statutes that have long established a policy requiring that liens be recorded in a certain place, at which place a potential creditor or assignee would be able to search for recordation and become informed of a perfected lien. Under

these statutes, a potential creditor or assignee is only required to search for a recorded lien, so that it does not have to ask a debtor about the existence of liens and risk an incomplete or inaccurate response. The recording lien perfection statutes instead provide for a creditor's sole method for protecting its lien—through recordation, which the IRS failed to do. If a court allows the IRS to setoff claims for taxes in which the debtor did not file a return and the IRS did not record a lien, then the assignment of the contract proceeds is defeated by the secret lien. Such a situation leaves the assignee with no means of protecting itself from setoff claims of which it was unaware, and presents sufficiently compelling circumstance for disallowance of setoff.

Accordingly, I would affirm the decision of the bankruptcy court.