In re BROWN & COLE STORES, LLC, Debtor.

Brown & Cole Stores, LLC, Appellant,

v.

Associated Grocers, Inc.; Official Unsecured Creditors Committee; Harris Bank, N.A., Appellees.

BAP No. WW–07–1123–MoDJ.
Bankruptcy No. 06–13950–SJS.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 27, 2007.

Filed Aug. 17, 2007.

Armand J. Kornfield, Bush, Strout & Kornfield, Seattle, WA, for Brown and Cole Stores, LLC.

Jack J. Cullen, Foster, Pepper, PLLC, Seattle, WA, for Associated Grocers, Inc.

Before: MONTALI, DUNN and

JAROSLOVSKY,[1] Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

This case presents us with an issue of first impression regarding new section 503(b)(9) ("§ 503(b)(9)") of the Bankruptcy Code, as amended in 2005.[2] We expect that the issue is of great importance to many sellers of goods to troubled companies. The new provision gives expense-of-administration priority ("administrative priority") to a claim for the value of goods received by a debtor within 20 days before the commencement of the case and sold in the ordinary course of business ("twenty-day sales").[3] The bankruptcy court granted administrative priority to a claim that may also be secured and denied the debtor's claim of setoff. We AFFIRM the grant of administrative priority; we REVERSE the denial of setoff.

## I. FACTS

Debtor and appellant Brown and Cole Stores, LLC ("B & C"), is a large, privately-held grocery store chain. It operates 27 stores in Washington state. It employs about 1,500 people and has annual revenues of about $280 million.

Creditor and appellee Associated Grocers, Incorporated ("AGI"), is B & C's principal supplier and wholesaler, with sales to B & C of $2.5 to $3 million per week. AGI is a cooperative and B & C is its largest shareholder, holding approximately 25% of AGI's outstanding stock. AGI claims a first-position security interest in the AGI stock[4] to secure all indebtedness of B & C to AGI. The total indebtedness asserted by AGI has several components: approximately $907,000 for products covered by the Perishable Agricultural Commodities Act ("PACA") and sold prior to bankruptcy; approximately $4,166,000 for goods sold more than twenty-days before bankruptcy and not included in the PACA claim; pre-petition rent under various leases in the approximate amount of $125,000; potential rejection damages in excess of $4,637,000 on account of lease rejections that likely have occurred, plus additional rejection damages that could exceed $10,000,000; and nearly $6,380,000 for the twenty-day sales (the "twenty-day sales claim").

---

1. Hon. Alan Jaroslovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as revised by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23 ("BAPCPA").

3. The legislative history of § 503(b)(9) "suggests that it was aimed at providing relief to sellers of goods who fail to give the required notice under the reclamation provision of section 546(c)[.]" Shirley S. Cho, *The Intersection of Critical Vendor Orders and Bankruptcy Code § 503(b)(9)*, 29 Cal. Bankr.J. 7, 11 (2007), citing BAPCPA, Pub.L. No. 109–8 at § 1227. The administrative priority status accorded by § 503(b)(9) is not limited to "critical vendors," a term that is not defined in the Bankruptcy Code. Alan N. Resnick, *The Future of the Doctrine of Necessity and Critical-Vendor Payments in Chapter 11 Cases*, 47 B.C. L.Rev. 183, 205 (Dec.2005) (§ 503(b)(9) administrative priority does not require a demonstration that the creditor is "critical" or that payment of the claim is necessary for a successful reorganization, especially since § 503(b)(9) also applies in liquidation cases).

4. The value of that stock is disputed by the parties. B & C contends that it is significantly more than the amount AGI is owed. AGI contends that B & C is bound to a value based on the stock's book value. Because we hold that AGI's twenty-day sales claim is entitled to administrative priority whether it is over-secured, under-secured, or unsecured, the value of the stock is irrelevant to our decision.

B & C and AGI are parties to a Master Supply Agreement which contains a "most favored nations" pricing provision requiring AGI to sell goods to B & C on terms no less favorable than to any other of AGI's shareholders or customers. B & C contends that for some time prior to bankruptcy, AGI breached the Master Supply Agreement by selling goods to B & C at higher prices than it charged other customers.

B & C also contends that AGI unlawfully terminated a rebate program that has caused damages "well into seven figures."

Shortly after B & C filed its chapter 11 petition on November 7, 2006, AGI filed a motion for allowance and payment of $6,379,879.51 for the twenty-day sales claim. It relied on § 503(b)(9), which provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . ., including—
>
> . . .
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

B & C opposed AGI's motion on four grounds. First, it argued that AGI's claim was not entitled to administrative priority under § 503(b)(9) because it was a secured claim. At oral argument counsel for B & C clarified that it is the security claimed by AGI for the twenty-day sales claim that disqualifies that claim for administrative priority, regardless of whether AGI's other claims are secured, partially secured or unsecured.

Second, B & C argued that since AGI's twenty-day sales claim was fully secured, allowing payment to AGI of an administrative priority claim would be inequitable to other creditors. Third, B & C contended that it was entitled to a setoff for its damage claims arising out of AGI's breach of the "most favored nations" pricing provision of the Master Supply Agreement and termination of the rebate program. Fourth, it argued that any payment should be deferred until plan confirmation. AGI subsequently withdrew its demand for immediate payment, leaving only the first three arguments to be decided by the bankruptcy court.

The bankruptcy court granted AGI's motion and denied B & C's request for a setoff. In support of its ruling, the court found that the plain meaning of § 503(b)(9) was to allow administrative priority regardless of security. In support of its refusal to allow setoff, it held that unsecured claims cannot be set off against administrative priority claims and that B & C was equitably estopped from asserting a setoff because it had ordered the goods from AGI while contemplating bankruptcy. The court stated:

> Now, on top of that, offset is an equitable doctrine, and I really have my doubts as to the debtor's conduct immediately before the filing in the ordering and accepting delivery of these goods. In other words, I don't think the debtor acted in an equitable manner, and therefore, an offset is not allowable.

This timely appeal followed.[5]

---

**5.** On April 30, 2007, B & C filed a Request For Judicial Notice with us. It asks that we consider a public record of a sale by AGI of its real property referred to by B & C in its opening brief. This information, obviously, was not available to the bankruptcy court and has no bearing on our review of the bankruptcy court's decision. The Request For Judicial Notice is DENIED, particularly because the post-appeal sale is immaterial to resolution of this appeal, and thus no extraordinary circumstances here warrant a review of material

## II. ISSUES

A. Is a secured claim entitled to an administrative priority pursuant to § 503(b)(9)?

B. Did the bankruptcy court properly deny B & C's request for setoff?

## III. STANDARDS OF REVIEW

■■■ Interpretation of a statute is a question of law which we review *de novo.* *Smith v. Arthur Andersen LLP,* 421 F.3d 989, 1006 (9th Cir.2005). We review decisions to allow or disallow setoff under § 553 for abuse of discretion. *Biggs v. Stovin (In re Luz Int'l, Ltd.),* 219 B.R. 837, 840 (9th Cir. BAP 1998); *HAL, Inc. v. United States (In re HAL, Inc.),* 196 B.R. 159, 161 (9th Cir. BAP 1996), *aff'd,* 122 F.3d 851 (9th Cir.1997); *United States v. Arkison (In re Cascade Roads, Inc.),* 34 F.3d 756, 763 (9th Cir.1994).

## IV. DISCUSSION

A. A Secured Claim May be Given § 503(b)(9) Administrative Priority.

■■■ As we have just noted in *Cohen v. Lopez (In re Lopez),* 372 B.R. 40 (9th Cir. BAP 2007), interpreting a statutory provision begins with the language of the statute itself. *See Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("The starting point in discerning congressional intent is the existing statutory text [citation omitted], and not the predecessor statutes. It is well

established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000))).

■■■ B & C contends that we should disregard this fundamental principle of statutory interpretation and instead be guided by history of a nearby section, § 503(b)(1)(B)(i).[6] Prior to BAPCPA, cases had been divided whether administrative priority was available for secured tax claims. In *In re Florida Engineered Constr. Prods., Corp.,* 157 B.R. 698, 700 (Bankr.M.D.Fla.1993), the court held:

> Even a cursory analysis of the entire § 503 leaves no doubt that all claims recognized under this Section are unsecured claims, incurred by the estate after commencement of a case. There is no evidence to assume that Congress ever intended to include secured claims within the scope of § 503 which, by the way, enjoy a rank and a treatment even higher than allowed administrative expenses.

*See also In re Sylvia Dev. Corp.,* 178 B.R. 96 (Bankr.D.Md.1995). However, in *City of New York v. R.H. Macy & Co. (In re R.H. Macy & Co.),* 176 B.R. 315, 316–17 (S.D.N.Y.1994), the district court reversed a bankruptcy court's ruling that a secured tax claim was not entitled to administrative

---

not considered by the bankruptcy court. *Frankfurth v. Cummins (In re Cummins),* 20 B.R. 652, 653 (9th Cir. BAP 1982) ("Ordinarily an appellate court should base its decision on the facts as they existed at the time the trial court made its decision[,]" although in extraordinary circumstances an appellate court may " 'take judicial notice of developments in a case on appeal which have occurred in the [trial] court after the appeal was filed.' ").

6. Section 503(b)(1)(B)(i) provides administrative priority for any tax "incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title[.]"

priority. The split of authority was recognized by subsequent courts. *See, e.g., In re Soltan,* 234 B.R. 260, 269 (Bankr. E.D.N.Y.1999).

BAPCPA amended § 503(b)(1)(B)(i) by inserting "whether secured or unsecured," after "any tax [ ] incurred by the estate," resolving the disagreement among the cases cited. Armed with that history, B & C asks us to infer that § 503(b)(9) is limited to unsecured claims because of the absence of the word "secured" in the statute. In other words, because the BAPCPA amendments settled the question of what tax claims were eligible for administrative priority (secured, unsecured or both), we should conclude that § 503(b)(9) is limited to unsecured claims.

We reject that invitation. The provision is not ambiguous; as such, we must enforce it according to its terms and should not inquire beyond its plain language. *Lamie,* 540 U.S. at 534, 124 S.Ct. 1023. Apart from finding no ambiguity in § 503(b)(9), we note that Congress also declined to put the word "unsecured" into the same statute.[7] The obvious conclusion, therefore, is that all claims arising from twenty-day sales are entitled to administrative priority.

We can do nothing about B & C's contention that giving priority to a secured creditor may be inequitable to other creditors. First, it is up to Congress to decide which creditors have leverage and which do not. More importantly, if AGI's twenty-day sales claim is fully secured, then payment of it by B & C will free the value of the security for that claim for the benefit of other creditors. If AGI's claim proves to be undersecured or unsecured, then to deny administrative priority would be to ignore the statute, something we cannot do.[8]

### B. Denial of Setoff was Improper.

1. There is the requisite element of mutuality in the competing claims.

■ The bankruptcy court ruled as a matter of law that "I don't see how you can setoff unsecured matters against a priority administrative expense claim." While this principle undoubtedly seemed elementary and beyond dispute to the bankruptcy court, it did not take into consideration the uniqueness of § 503(b)(9) and the treatment Congress has given to

---

7. By the plain terms of the statute, a vendor's right to assert an administrative claim is limited in only three ways: (1) the vendor must have provided goods (not services); (2) the debtor must have received the goods within twenty-days of the commencement of the case; and (3) the goods must have been sold "in the ordinary course" of the debtor's business. "This right to an administrative claim does not depend on whether the seller has a right to reclaim under state law. . . . It applies even if the goods are no longer in the possession of the debtor or are not identifiable. It applies even if the goods are encumbered by a senior security interest." Sally S. Neely, *How BAPCPA Affects the Rights of Unpaid Prepetition Sellers of Goods,* SM014 ALI–ABA 31 (March 2007). Nor is the administrative claim limited to critical vendors. Resnick, 47 B.C. L.Rev. at 205.

8. The dissent is concerned that we are ignoring bankruptcy policy that permits a Chapter 11 debtor to "cramdown" a secured claim in full over time. Congress gave tremendous leverage to a twenty-day sales claimant such as AGI by permitting it to demand full payment as of confirmation, and in doing so, perhaps dramatically affecting the outcome of the case. The fact that the claim is also secured represents less leverage (albeit more than held by non-priority general unsecured claims) than having administrative priority. It is not our place to reallocate that leverage. In any event, if the dissent's view were the law, the holder of a twenty-day sales claim could simply waive its security, obtain administrative priority, and have equally powerful influence over the outcome of the case.

twenty-day sales claims. Unlike all of the other subsections of § 503, subsection(b)(9) applies to prepetition debt. Congress has simply moved those claims up higher on the priority ladder. All of the other subsections of § 503 create administrative priority for postpetition debt. This is a crucial difference when applying the setoff provisions of the Bankruptcy Code.

Section 553(a) provides, in pertinent part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .

Thus the provisions of § 553(a), which provide for setoff of mutual debts which arise before bankruptcy, do not apply to most administrative priority claims but do apply to twenty-day sales claims, which by definition arise prepetition. *See Luz Int'l*, 219 B.R. at 843–44 ("In determining whether the right to setoff should be preserved in bankruptcy under § 553, the party asserting setoff must demonstrate the following: (1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual."). It was therefore error for the bankruptcy court to determine, as a matter of law, that setoff was not permitted against AGI's twenty-day sales claim.[9]

**2. Appellant should not be denied set-off as a matter of equity.**

 While equitable considerations may be considered in allowing or denying a setoff (*Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re The Bennett Funding Group, Inc.)*, 212 B.R. 206, 212 (2nd Cir. BAP 1997), *aff'd*, 146 F.3d 136 (2d Cir.1998)), the sole equitable ground stated by the bankruptcy court had not been established by any evidence in the record. A debtor contemplating reorganization is under no legal obligation to inform suppliers that it is contemplating a bankruptcy filing. Further, AGI did not offer any facts to establish that B & C engaged in any inequitable conduct. Nor did it ever make the argument. The court, sua sponte, raised this issue, perhaps imposing its own value judgment on B & C's behavior. That was not appropriate, particularly in the absence of a compelling circumstance justifying the refusal to permit setoff. *United States v. Offord Finance, Inc. (In re Medina)*, 205 B.R. 216, 223 (9th Cir. BAP 1996) ("Although the allowance or disallowance of a set off [sic] is a decision which ultimately rests within the sound discretion of the trial court, the setoff right is an established part of our bankruptcy laws and should be enforced unless compelling circumstances require otherwise.") (internal citations and quotation marks omitted); *see also In re Silver Eagle Co.*, 262 B.R. 534, 536 (Bankr.D.Or.2001) (same).

The decision of a supplier to extend credit to a purchaser is a complex one, factoring in the potential profit to be made from a continuing relationship and an as-

---

9. AGI does not offer any support for the bankruptcy court's conclusion in its brief. Instead, it argues that we should sustain based on arguments not raised below or considered by the bankruptcy court, including provisions of the Washington Uniform Commercial Code and alleged failure of B & C to follow contractual requirements for asserting a setoff. We decline to consider these issues, which can be raised before the bankruptcy court on remand.

sessment of the purchaser's credit. A Chapter 11 filing does not create an insolvency or a risk of nonpayment, it merely confirms its existence and, hopefully, is a first step towards solving the problem. A rule which requires a potential debtor to warn all its suppliers that it is contemplating a filing would make reorganization much more difficult and in many cases impossible.

Moreover, even if we were to accept the proposition that B & C was under some sort of duty to "warn" AGI that it was contemplating Chapter 11, there is no evidence in the record to support a finding that AGI was in any way harmed by a lack of notice. In addition to its reclamation rights under § 546(c),[10] AGI has security and its administrative priority pursuant to § 503(b)(9) for its twenty-day sales claim. There is accordingly no basis to void B & C's right to setoff on equitable grounds. *Silver Eagle*, 262 B.R. at 537 ("The Trustee purports to base his request for denial of the setoff on the court's discretionary power to deny setoff based on general equitable principles. However, this case does not have the type of facts or the procedural posture that provide a sufficient basis for the court to exercise its discretion to overcome the statutory presumption favoring preservation of setoff rights.").

3. The consideration of setoff is premature.

█ Even though the court's refusal to allow setoff was an abuse of discretion as it was based on equitable grounds not supported by law or fact, B & C has not established that a right of setoff exists here. Rather, we must remand for application of the appropriate standards for determining whether to grant a setoff. *Medina*, 205 B.R. at 223 ("Because the court did not cite any compelling circumstances for not allowing the setoff (other than those discussed above), the court's refusal to allow set off [sic] was an abuse of discretion and the case should be remanded to allow the court to apply the appropriate standards.").

As noted in *Luz International*, mutuality does not exist in "the absence of a debt owing from" the creditor. *Luz Int'l*, 219 B.R. at 845. At this point, the record has not established the existence of such a debt. The contentions by B & C that AGI breached the pricing agreement and wrongfully terminated the rebate program are nothing more than contentions alluded to in the papers and in the arguments of counsel. In fact, no contested matter or adversary proceeding has been commenced against AGI to determine the parties' rights under the Master Supply Agreement, its pricing provisions or the

10. Section 546(c) provides:
(c)(1) Except as provided in subsection (d) of this section and in section 507(c), and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but

such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods—
(A) not later than 45 days after the date of receipt of such goods by the debtor; or
(B) not later than 20 days after the date of commencement of the case, if the 45–day period expires after the commencement of the case.
(2) If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9).

rebate program. Thus, at present, there really is nothing for B & C to set off against the various AGI claims. If and when such claims are asserted in proper form and adjudicated by the bankruptcy court, then any and all defenses, setoffs, and counterclaims can be considered. *Id.*

## V. *CONCLUSION*

Section 503(b)(9) administrative priority is not limited to unsecured claims. We accordingly AFFIRM the ruling of the bankruptcy court that AGI is entitled to an administrative priority claim for goods received by B & C in the twenty-days before bankruptcy and in the ordinary course of business.

We hold that B & C is not denied setoff rights pursuant to § 553 of the Code against any twenty-day sales claim or other claims AGI has, and that there presently is no equitable basis for denial of these setoff rights in the record. Accordingly, we REVERSE the bankruptcy court's denial of B & C's setoff rights and we REMAND for further proceedings consistent with this opinion.

JAROSLOVSKY, Bankruptcy Judge, concurring in part and dissenting in part:

I agree with the majority's disposition of the setoff issues. I respectfully dissent from their overly-sterile conclusion that a fully secured creditor can also have rights under § 503(b)(9). Not only is my statutory analysis different, but I see compelling policy reasons for a different result.

I do not see the issue of whether a secured creditor can be entitled to an administrative expense claim being as simple as the "plain meaning" analysis of the majority. It is considerably complicated by the amendment to § 503(b)(1)(B)(i) of the

Code made by Congress at the same time it added § 503(b)(9).

At the same time as Congress was adding § 503(b)(9), it amended § 503(b)(1)(B)(i) by adding the language "whether secured or unsecured" to the section, thus resolving the disagreement as to whether a secured tax could be entitled to administrative priority. However, § 503(b)(9) does not include the same language. It is generally presumed that Congress acts intentionally when it includes particular language in one section of a statute but omits it from another. *Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *City of Chicago v. Envtl. Defense Fund,* 511 U.S. 328, 338, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994). If Congress had intended that all administrative expenses have priority regardless of secured status, it would certainly have added "whether secured or unsecured" in the first sentence of § 503(b) and not in just one of nine enumerated subsections.

Moreover, some fundamental policy considerations are at stake in this case. While allowing a priority claim to a secured creditor may not have a big impact in most Chapter 7 cases, it can make a huge difference in a Chapter 11 case like this one. If AGI's $6 million claim is entitled to priority status, § 1129(a)(9)(A) requires that it must be paid in full in cash upon confirmation. If it is treated as a secured claim, it still must be paid in full but is subject to cramdown pursuant to § 1129(b)(2)(A). If we incorporate by implication the "secured or unsecured" language into § 503(b)(9), we may be in effect giving a secured creditor veto power over a plan of reorganization when § 1129(b)(2)(A) and sound bankruptcy policy dictate that a secured creditor can be forced to accept a plan which is fair and

equitable to it, honors its secured status and pays its secured claim in full over time.[11]

Provisions of the Bankruptcy Code cannot be read in isolation but should be interpreted in light of the remainder of the statutory scheme. *United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370–72, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *In re Howard,* 972 F.2d 639, 640 (5th Cir.1992); *In re Kaveney,* 60 B.R. 34, 36 (9th Cir. BAP 1985). This is sometimes difficult when Congress has made an isolated change to one section of the Code without providing specific guidance as to how the new section is to be integrated. However, I see our proper role as meeting this challenge.

I would weave the new § 503(b)(9) into the tapestry of American bankruptcy law, preserving the clear intent of Congress to protect recent suppliers of goods to debtors without unraveling other provisions of the Code meant to facilitate reorganization.[12] I prefer this result to the crazy quilt patched together by my brethren.

---

**11.** These are not merely hypothetical concerns. The issue of how to treat AGI's claims in a plan of reorganization is now pending before the bankruptcy court.

**12.** Specifically, I would hold that a creditor would not be entitled to priority status for its twenty-day sales claim to the extent the claim is indubitably secured, applying any security first to claims other than the twenty-day sales claim. I note that AGI might well end up with an allowed priority twenty-day sales claim under this rule.